**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| | : | |
| DIANE E. JOSIFOVICH, | : | Civil Action No. 07-5469 (FLW) |
| | : | |
| Plaintiff, | : | |
| | : | **OPINION REGARDING ALLOCATION** |
| v. | : | **OF SETTLEMENT PROCEEDS** |
| | : | |
| SECURE COMPUTING | : | |
| CORPORATION, | : | |
| | : | |
| Defendant. | : | |

This matter comes before the Court on applications made by Plaintiff, Diane Josifovich [Docket Entry No. 36], and Defendant, Secure Computing Corporation [Docket Entry No. 38], through their counsel, for a determination as to whether employment tax withholdings are appropriate with regard to any or all of the settlement proceeds in this matter, and, if so, how those settlement proceeds should be allocated.  Additionally, Plaintiff has requested that the settlement proceeds be increased by the amount of any withholdings.  For the reasons discussed below, the Court concludes that Defendant must withhold employment taxes from a portion of the settlement proceeds, specifically the amount allocated as back pay and front pay.  Because the Court cannot determine the appropriate amount of the allocation based on the record before it, the Court will schedule a hearing, at which counsel may present argument on the limited issue of the actual allocation of the settlement proceeds, based on the conclusions and findings set forth in this opinion.  Finally, this Court declines to award Plaintiff any additional monies to compensate her for any negative tax consequences that may result.

## I.        FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On or about September 21, 2007, Plaintiff Diane Josifovich ("Plaintiff") filed a complaint against her former employer, Defendant Secure Computing Corporation ("Secure" or "Defendant"), in the Superior Court of New Jersey, Law Division, Somerset County, which Secure then removed to this Court [Docket Entry No. 1].  On February 19, 2008, Plaintiff amended the Complaint (the "Amended Complaint") [Docket Entry No. 11].

In the Amended Complaint, Plaintiff alleges, among other things, that Defendant failed to pay her earned commissions, and that Defendant violated the New Jersey Conscientious Employee Protection Act ("CEPA") and the New Jersey Law Against Discrimination ("LAD"). Plaintiff seeks various forms of relief, including: (1) back pay, (2) front pay, (3) emotional distress damages, and (4) attorneys' fees and costs.

On May 29, 2009, this Court conducted a lengthy settlement conference, which resulted in a settlement of the claims asserted in the Amended Complaint.  At the conclusion of the settlement conference, counsel for the parties put the essential terms of the agreement on the record, with the express representation that the terms would eventually be set forth in a formal document to be executed by the parties.

At some point, counsel notified the Court that while reducing the settlement agreement to writing, the parties had been unable to reach agreement with regard to whether the settlement proceeds were subject to the withholding of employment taxes.  The parties both agree that at least a portion of the settlement proceeds are in fact taxable; the only issue therefore is whether Defendant could, or indeed, must, withhold taxes from any portion of the settlement proceeds payable to Plaintiff and, if so, how much of the settlement proceeds should be subject to

2

withholding.  Neither party raised the issue of withholding during the seven-hour settlement conference, nor was it part of the terms deemed essential and put on the record at the conclusion of the settlement conference.

## II.   DISCUSSION

### A.   Withholding of employment taxes

At the outset, it is important to clarify what the issue is that the Court is called upon to determine.  The parties' dispute does not focus on whether tax treatment is an essential term of the settlement or on whether there is any reason not to enforce the agreement.  Indeed, it is clear that terms relating to the tax treatment of a settlement agreement are not considered essential, but rather are part of the implementation of the settlement agreement.  See McDonnell v. Engine Distributors, No. 03-1999, 2007 WL 2814628, at *8 (D.N.J., Sept. 24, 2007), aff'd, 314 Fed. Appx. 509 (3d Cir. Feb. 24, 2009).  Accordingly, there is no issue as to whether the settlement agreement is enforceable.

Similarly, whether the settlement proceeds are taxable, or whether they constitute gross income, is not before the Court.  The sole issue presented by the parties, therefore, is whether any portion of the settlement proceeds is subject to employment withholding taxes.  See Plaintiff's Brief ("Pl. Brief") at pp. 2, 7, 10.  Defendant contends that any portion attributable to "pay" is subject to withholding and that Defendant, as an employer, must therefore withhold employment taxes.  See Defendant's Brief ("Dft. Brief") at pp. 1, 3-4.  Plaintiff, by contrast, argues that no portion of the settlement proceeds should be subject to withholding.  See Pl. Brief at pp. 2, 5-7. Thus, Plaintiff contends that she should receive the entire gross amount of the settlement, and

3

any tax payment will be her obligation, not that of her former employer.  See Pl. Brief at p. 10.

Gross income, which is defined in 26 U.S.C. §61(a) as "all income from whatever source derived, including (but not limited to) the following items: (1) [c]ompensation for services, including fees, commissions, fringe benefits, and similar items," differs from income subject to withholding taxes, which is confined to wages.  Central Illinois Public Service Co. v. U.S., 435 U.S. 21, 25 (1978) (finding that lunch reimbursements to employees did not constitute wages).  As the Supreme Court explained in Central Illinois, while income and wages may be related and may overlap, the underlying concepts are not the same.  "Wages usually are income, but many items qualify as income and yet clearly are not wages." Id. (footnote omitted).  Indeed, the Court in Central Illinois pointed out that mandatory withholding tax is by definition a narrower concept than gross income taxability.  Id. at 29.

For withholding tax purposes, an employer has a legal duty to deduct and withhold taxes when "making [the] payment of wages," and the failure to do so may subject the employer to liability.  See 26 U.S.C. §3402(a)(1); 26 U.S.C. §3403; 26 U.S.C. §3509.  The term "wages" is defined in the Code as "all remuneration . . . for services performed by an employee for his [or her] employer."  See 26 U.S.C. §3401(a).

In Social Security Bd. v. Nierotko,  327 U.S. 358, 365-66 (1946), the Supreme Court held that a back pay award should be treated as wages, reasoning that "'service' as used by Congress in this definitive phrase [of the Social Security Act] means not only work actually done but the entire employer-employee relationship for which compensation is paid to the employee by the employer."  The Court further noted that the words used by Congress, "any service . . .

4

performed," "admonish us against holding that 'service' can be only productive activity." Id. at

365.

The Third Circuit recently considered whether early retirement benefits accorded to

tenured faculty constituted "wages" subject to withholdings.  University of Pittsburgh v. U.S.,

507 F.3d 165 (2007).  At the outset, the Court reviewed the various statutes that form the basis

for an employer's obligation to withhold, and then looked to Nierotko for guidance as to the

scope of the term "wages."  Id. at 168.  In finding that the retirement benefits were in fact wages,

and therefore subject to withholding, the Third Circuit noted that "the weight of authority holds

that compensation paid to an employee for services to her employer constitutes wages . . .

regardless of whether it is prospective (for lost earning potential) or retrospective (as a reward for

past service)."  Id. at 171; see also Appoloni v. U.S., 450 F.3d 185, 190 (6th Cir. 2006) ("The

holding in Nierotko clearly supports the conclusion that awards representing a loss in wages,

both back wages and future wages, that otherwise would have been paid, reflect compensation

paid to the employee because of the employer-employee relationship, regardless of whether the

employee actually worked during the time period in question.")

Other courts have applied Nierotko where an employer seeks to withhold taxes from

settlement proceeds allocated to back and front pay.  See Rivera v. Baker West, Inc., 430 F.3d

1253, 1259 (9th Cir. 2005) (stating that "back pay and lost wages constitute 'wages' for taxable

withholding purposes"); Amalgamated Transit Union Local 880 v. NJ Transit Bus Operations,

Inc., 385 N.J. Super. 298, 305 (App. Div. 2006) (noting that "the Nierotko analysis of back pay

awards as wages remains valid"); Amalgamated Transit Union, Local 1317 v. DeCamp Bus

Lines, Inc., 382 N.J. Super. 418, 431 (Law Div. 2005) (analyzing Nierotko and finding that back

pay award was subject to withholding taxes); Hemelt v. U.S., 122 F.3d 204, 209-10 (4th Cir.

1997) (in case involving ERISA damages, finding that "lost wages and other economic harms are

a major component" of equitable relief; "because the payments . . . arose out of [the] employment

relationship, they fit within the statutory and regulatory definition of wages and . . . taxes were

properly withheld"); Gerbec v. U.S., 164 F.3d 1015, 1026 (6th Cir. 1999) (holding that both back

and front pay are subject to withholding, stating that Nierotko "clearly supports the conclusion

that awards representing a loss in wages . . . reflect compensation paid . . . regardless of whether

the employee actually worked during the time period in question").

 Plaintiff contends that none of the settlement proceeds should be subject to tax

withholding.  See Pl. Brief at p. 9.  Based on the cases cited, however, there is no question that

back pay, paid as compensation for a period in which the former employee actually rendered

services, must be the subject of withholding.  Accordingly, this Court finds that Defendant must

withhold taxes from any amount of the settlement proceeds allocated to Plaintiff's back pay

claims.

 With respect to any portion of the settlement proceeds allocated to front pay, Plaintiff

argues that Secure may not withhold taxes because she did not actually perform services during

the front pay time period.  See Pl. Brief at p. 6.  In support of her argument, Plaintiff cites Carr v.

Fresenius Med. Care, No. 05-2228, 2006 WL 1339970 (E.D. Pa. 2006), Churchill v. Star

Enterprises, 3 F. Supp. 2d 622 (E.D. Pa. 1998), Kelly v. Hunton & Williams, No. 97-cv-5631,

1999 U.S. Dist. LEXIS 14605 (E.D.N.Y. 1999), Kim v. Monmouth College, 320 N.J. Super. 157

(Law Div. 1998) and Lisec v. United Airlines, 10 Cal. App. 4th 1500 (6th Dist. Ct. App. 1992).

However, the cases Plaintiff cites can all be distinguished from this case.

In <u>Carr</u> and <u>Churchill</u>, the statute at issue — the Family and Medical Leave Act, 29 U.S.C. 2601, <u>et seq</u>. (the "FMLA") — and more particularly its unique language creating a remedy of "damages . . . *equal to the amount of wages*," played a significant role in the outcome. <u>Carr</u>, 2006 WL 1339970, at *4 (emphasis added); <u>see also</u> <u>Churchill</u>, 3 F. Supp. 2d at 624. Specifically, the <u>Carr</u> court distinguished <u>Nierotko</u> based on the FMLA's remedial "equal to" language, noting that the <u>Nierotko</u> plaintiff was subject to a different provision lacking such language. <u>Carr</u>, 2006 WL 1339970, at *4. Similarly, the <u>Churchill</u> court referenced the "equal to" language utilized by the FMLA.[1] <u>See</u> 3 F. Supp. 2d at 624. Here, the relief Plaintiff seeks arises from causes of action based on contract and quasi-contract theories, CEPA and the LAD, but not the FMLA. None of the causes of action Plaintiff asserts employs the unique "equal to" remedial language appearing in the FMLA. <u>See</u> N.J.S.A. 10:5-1, <u>et seq</u>.; N.J.S.A. 34:19-13. Therefore, <u>Carr</u> and <u>Churchill</u> are inapposite.

Neither <u>Kim</u> nor <u>Kelly</u> even cites to <u>Nierotko</u>. <u>See</u> 320 N.J. Super. 157; 1999 U.S. Dist. LEXIS 14605. To the extent that <u>Kim</u> and Kelly are inconsistent with <u>Nierotko</u>, this Court declines to follow them. <u>See</u> <u>Amalgamated Transit Union Local 880</u>, 385 N.J. Super. at 305, (citing <u>Amalgamated Transit Union, Local 1317</u>, 382 N.J. Super. at 431).

Finally, although the court in <u>Lisec</u> determined that an economic damages award for

---

[1] Although the New Jersey Law Division in <u>Kim</u>, <u>supra</u>, 320 N.J. Super. at 161, stated in <u>dicta</u> and without extensive discussion that <u>Churchill</u>'s holding was not limited to cases arising under the FMLA, this Court is not persuaded. It is well established that the FMLA's provisional remedies are unique and distinct from other employment discrimination statutes. <u>See</u>, <u>e.g.</u>, <u>Longstreth v. Copple</u>, 101 F. Supp.2d 776, 780-81 (N.D. Iowa 2000) (comparing the FMLA's "equal to the amount of" phraseology with various other employment discrimination statutes, and finding that unlike the other statutes, "damages under the FMLA do not *per se* constitute wages that are subject to statutory deductions.").

wrongful termination was not subject to withholding taxes, 10 Cal. App. 4th at 1507, it did so without effectively distinguishing <u>Nierotko</u>.   The <u>Lisec</u> court cited to <u>Nierotko</u>, <u>id.</u> at 1505-07, pointing out that the <u>Nierotko</u> plaintiff was reinstated and was therefore an employee at the time of the award (as opposed to a former employee).   The court in <u>Lisec</u> apparently concluded that the current employment status was determinative, and that former employers were not obligated to withhold taxes if services had not actually been performed.   <u>See id.</u> at 1507.   This ignores the fact that regardless of whether the employee in <u>Nierotko</u> was reinstated, he did not actually perform services during the period for which compensation was awarded.   This Court is not persuaded by <u>Lisec</u> insofar as it conflicts with the Supreme Court's interpretation of services performed in <u>Nierotko</u>.

Moreover, even where a plaintiff has not been reinstated, courts have held that settlement proceeds allocated to future wages are subject to employment withholding taxes in light of <u>Nierotko</u>.  <u>Gerbec</u>, <u>supra</u>, 164 F.3d at 1026 (front pay settlement payments awarded to laid off employees subject to Federal Insurance Contributions Act ("FICA") taxation); <u>Hemelt</u>, <u>supra</u>, 122 F.3d at 209-10 (settlement payment to former employees for loss of future earning capacity arose out of employment relationship and thus was wages for FICA purposes).

Because the Supreme Court in <u>Niertotko</u> held that services performed — a component of the definition of wages, which are subject to withholding — encompasses the entire employee-employer relationship and not merely the work actually performed, this Court concludes that front pay, like back pay, is subject to withholding taxes.  Accordingly, Secure should withhold taxes from all settlement proceeds allocated to back and front pay.

The issue with regard to the settlement proceeds is further complicated by the fact that in

8

addition to front and back pay, Plaintiff also seeks relief in the Amended Complaint for

emotional distress and attorneys' and costs.  Both parties seem to agree that any portion of the

settlement proceeds attributable to emotional distress and attorneys' fees and costs should be

subject to a form 1099, rather than a W-2 form for employee wages.  Because the parties do not

dispute the tax treatment of Plaintiff's emotional distress and attorneys' fees and costs, this

Court's analysis with regard to whether taxes must be withheld is limited to back and front pay.

**B.      Allocation of the Settlement Proceeds**

The parties disagree as to how the settlement proceeds should actually be allocated to

each of Plaintiff's claims.  Plaintiff alleges causes of action based on breach of contract,

promissory estoppel, equitable estoppel, misrepresentation, breach of the implied covenant of

good faith and fair dealing, CEPA, and the LAD.  Emotional distress damages are sought in the

LAD counts only.  The parties agreed to a lump sum figure to settle all claims alleged, and did

not address allocation of amounts to specific claims or categories of damages.

The judicial allocation of settlement proceeds frequently arises where a taxpayer

challenges a determination by the Internal Revenue Service ("IRS"), requiring some or all of a

settlement to be included as gross income, pursuant to 26 U.S.C. §104(a)(2).  See Francisco v.

U.S., 267 F.3d 303 (3d Cir. 2001); Peaco v. Comm'r of Internal Revenue, 48 Fed. Appx. 423,

425-26 (3d Cir. 2002).  Although 26 U.S.C. 104(a)(2) is not at issue here, those cases remain

instructive with regard to judicial allocation of settlement proceeds.

Where the parties have not themselves allocated the settlement proceeds, a court will do

so by considering a number of factors, including "the pleadings, the evidence, the terms of the

settlement and the intent of the payor."  Glatthorn v. U.S., 818 F. Supp. 1548, 1551 (S.D. Fla.

1993).  The intent of the payor, if available, may be deemed paramount evidence of how a settlement should be apportioned.  Francisco, supra, 267 F.3d at 319-21.  A court may determine the payor's intent by reviewing the pleadings, jury awards and any other Court orders or judgments.  See Barnes v. Comm'r of Internal Revenue, No. 21856-95, 1997 WL 12138, at *3-4 (U.S. Tax Ct. 1997).  Thus, the court may look beyond the face of the agreement between the parties, to glean the "true nature" of the payment.  Peaco, supra, 48 Fed. Appx. at 425-26.  This is particularly so when any allocation in the settlement agreement itself may be driven by tax considerations, rather than the true value of the claims being settled.  Id. at 426.

Here, the Court has been provided with Plaintiff's economic expert's report, and has also reviewed the Amended Complaint.  Both documents provide insight with regard to Plaintiff's alleged contract damages.  The Court has not been given any support, however, for Plaintiff's allegation that a substantial portion of the settlement proceeds should be allocated to emotional distress, nor has the Court received a final indication of the amount of legal fees and costs incurred by Plaintiff.  For this reason, before making a determination as the appropriate amounts, if any, to be allocated to back and front pay, emotional distress, and attorneys' fees and costs, this Court will conduct a hearing, at which counsel will be asked to present argument limited to the issue of the actual amounts to be allocated to each element of damages.

### C.    Additional Award

Finally, Plaintiff argues that if this Court determines that any portion of her settlement proceeds is subject to withholding, she is entitled to have that amount "equitably grossed up."  In so arguing, Plaintiff relies on the Third Circuit's recent decision in Eshelman v. Agere Sys. Inc., 554 F.3d 426 (3d Cir. 2009).  See Pl. Brief at pp. 3-4, 6.  This Court disagrees.

10

In Eshelman, 554 F.3d at 440, a jury found that the defendant, the plaintiff's former employer, had discriminated against her in terminating her employment.  The jury awarded the plaintiff back pay, to which the district court then added a sum of money to compensate for the negative tax consequences of a lump sum back pay award.  Id.  In affirming the award, the Third Circuit explained that the district court exercised its broad equitable powers under the anti-discrimination statute involved and could properly award a prevailing employee additional monies to make her whole.  Id. at 442.  The Third Circuit cautioned, however, that prevailing plaintiffs pursuing causes of action under anti-discrimination statutes are not presumptively entitled to such additional monies and that they still bear the burden of proving the extent of their injury.  Id. at 443.

By contrast to Eshelman, where a plaintiff requested an additional award to offset the alleged tax consequences of a jury's back pay award, but failed to show how the equities demanded such an award or to provide a non-speculative calculation, a court recently found that he had failed to carry his burden.  Argue v. Davis Davis Enterprises, Inc., No. 02-9521, 2009 WL 750197, at *26-27 (E.D. Pa. Mar. 20, 2009).  This Court finds that Plaintiff has similarly failed to carry her burden for the reasons that follow.

Unlike the plaintiff in Eshelman, Plaintiff was not the recipient of a jury award.  To the contrary, Plaintiff here entered into a voluntary settlement agreement.  This Court will not alter the terms of that voluntary settlement agreement and require Defendant to pay more simply because Plaintiff now, after the close of negotiations, is dissatisfied with the anticipated tax consequences of her agreement.  A settlement agreement is a contract and, consequently, a court will not rewrite that contract simply to provide one party with a better bargain than the one she

11

negotiated.  Grow Co., Inc. v. Chokshi, 403 N.J. Super. 443, 464 (App. Div. 2008).  Plaintiff, as

opposed to the recipient of a jury award, possessed control in arriving at the terms of the

settlement and the amount of the payment.

      Nor has Plaintiff established that she, like the plaintiff in Eshelman, is a prevailing party

under a remedial statute.  Although a settling plaintiff may in some instances be deemed a

prevailing party, there is no evidence here that Plaintiff has the necessary judicial *imprimatur* to

be so deemed.  See Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health &

Human Res., 532 U.S. 598, 605 (2001); see also Truesdell v. Phila. Housing Auth., 290 F.3d

159, 164 (3d Cir. 2002); A.W. v. East Orange Bd. of Ed., 248 Fed. Appx. 363, 364 (3d Cir.

2007) (finding a prevailing party may exist when the change in legal relationship has been

judicially sanctioned).  Plaintiff has not even attempted to show how she is a prevailing party

and, therefore, the Court is not persuaded.

      Finally, in Eshelman, the Third Circuit's additional award compensated the plaintiff only

for the negative tax consequences that resulted from payment of the back pay award in the form

of a lump sum, rather than a payment over a number of years.  Id. 554 F.3d at 442.  The

additional award, however, did not provide compensation for the entire tax consequence

attributable to the award, and did not even address the withholding of mandatory employment

taxes.  Id.  Defendant is required to withhold employment taxes regardless of the payment form,

an issue which Eschelman does not address.

      This Court finds that for Plaintiff to receive an additional settlement, in excess of that

agreed upon by the parties, when the negotiation was with full awareness of the fact that there

would be tax consequences, would constitute a windfall to Plaintiff.  The Court therefore denies

the request for a "gross up" of the settlement amount to cover any tax liabilities.

**III.    CONCLUSION**

For the foregoing reasons, Defendant is required to withhold applicable employment

taxes from that portion of the settlement proceeds allocated to back pay and front pay, and an

appropriate W-2 form should be issued.  Any settlement proceeds allocated to Plaintiff's

emotional distress claims and attorneys' fees and costs are to be paid with no employment taxes

withheld, and should be issued with a Form 1099.  The Court will hear oral argument of counsel

limited to the amount of the allocation of the settlement proceeds.  Plaintiff's request for an

additional award to offset any negative tax consequences to her settlement proceeds is hereby

denied.  An appropriate Order accompanies this Opinion.


                                        s/ Lois H. Goodman____
                                        **HONORABLE LOIS H. GOODMAN**
                                        **UNITED STATES MAGISTRATE JUDGE**

**DATED**: July 31, 2009